BORBELY, APPELLANT, *v.* PRESTOLE EVERLOCK, INC. ET AL., APPELLEES.

[Cite as Borbely *v.* Prestole Everlock, Inc. (1991), 57 Ohio St. 3d 67.]

(No. 89-1506—Submitted September 19, 1990—Decided January 16, 1991.)

*Gallon, Kalniz & Iorio Co., L.P.A.,* *Vincent S. Mezinko* and *Theodore A. Bowman,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Michael L. Squillace* and *Gerald H. Waterman,* for appellee Administrator, Bureau of Workers' Compensation.

SWEENEY, J. At the time of the death in question, R.C. 4123.54 provided in pertinent part:

"Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not purposely self-inflicted, is entitled to receive * * * such compensation for loss sustained on account of such in-

jury, occupational disease or death * * * and such amount of funeral expenses in case of death, as are provided by sections 4123.01 to 4123.94 of the Revised Code." 137 Ohio Laws, Part II, 3944.

In *Indus. Comm.* v. *Brubaker* (1935), 129 Ohio St. 617, 3 O.O. 21, 196 N.E. 409, it was held in the syllabus:

"1. The law of Ohio precludes recovery of compensation for a purposely self-inflicted injury or death. (Section 1465-68, General Code.)

"2. In order for dependents to recover under the Workmen's Compensation Law of Ohio for death by suicide, they must prove by the greater weight of the evidence: *First,* an injury in the course of employment; *second,* that the injury produced mental derangement to the extent that the employee could not entertain a fixed purpose to take his own life; and *third,* that the suicide was the direct result of that lack of purpose that characterizes an insane mind."

G.C. 1465-68, as construed above, contained essentially the same language as R.C. 4123.54, except for the fact that the latter statute now includes "occupational disease" in its coverage of compensable injuries.

The court of appeals below denied compensation to the appellant-widow based on the second paragraph of the *Brubaker* syllabus. However, the appellee administrator contends before this court that the standards enunciated in *Brubaker* "* * * should be re-examined and modified."

After much consideration, we believe that the *Brubaker* standard is unsatisfactory in adjudicating cases such as the cause *sub judice.* Therefore, for the reasons that follow, we reverse the judgment of the court of appeals below and remand the cause for further proceedings that are consistent with this opinion.

Research indicates that early workers' compensation cases involving suicide were measured in most jurisdictions by a standard that is sometimes referred to as the "rule in *Sponatski's Case.*" This standard, which gained its title from the case *In re Sponatski* (1915), 220 Mass. 526, 108 N.E. 466, essentially stated that compensation in suicide cases was not payable unless, as the direct result of a physical injury, the victim suffered from insanity of such violence as to cause him to take his own life through either (1) an uncontrollable impulse; or (2) a delirium or frenzy without conscious volition to produce death. 1A Larson, The Law of Workmen's Compensation (1990) 6-141, Section 36.10.

The *Brubaker* standard, which is a variation of *Sponatski,* clearly contains the second element of *Sponatski* in requiring that the work-related injury produced "mental derangement to the extent that the employee could not entertain a fixed purpose to take his own life * * *." *Brubaker, supra,* at paragraph two of the syllabus; Larson, *supra,* at 6-153, Section 36.22, fn. 25.17.

As pointed out by Professor Larson, such a standard is almost directly traceable to the insanity test set forth in *M'Naghten's Case* (1843), 10 Clark & F. 200, 8 Eng. Reprint 718. Larson, *supra,* at 6-145. "It can well be argued in a criminal case that the accused's *understanding* is a crucial element, since it is necessary to the establishment of *mens rea* or criminal intent. But in the compensation suicide defense, the only legal issue is causation, and that in turn depends on the *will,* not on the understanding." (Emphasis *sic.*) *Id.* In echoing Larson's criticism of what we characterize herein as the *Sponatski/Brubaker* stan-

dard, we find that the question of whether the decedent knew the physical consequences of his or her act is totally irrelevant to the question of causation. *Id.*

In our view, simply because a person is capable of having a fixed purpose to commit suicide does not necessarily mean that the resulting suicide is voluntary. Thus, we believe that the emphasis and focus on determining whether a particular suicide is compensable should rest on precisely what caused the person to commit suicide, not on the person's understanding of the act and its consequences.

In formulating a new standard to replace *Brubaker,* we note that a majority of jurisdictions have rejected or modified the *Sponatski* standard in favor of a standard known generally as the "chain-of-causation" test. Larson, *supra,* at Section 36.30. In essence, "[t]his rule rejects the tort liability concept of fault (which stresses the independent intervening cause), and the criminal-law standard of insanity (which requires that the person not know what he is doing), substituting therefor the 'chain-of-causation' or 'but for' test and the requirement of an uncontrollable 'compulsion' to commit suicide. This latter requirement differs from the uncontrollable 'impulse' test, as it has been applied under the Sponatski rule, in that the compulsion need not be abrupt or unpremeditated, but must be the result of an inability to exercise sound discretion. * * *" Annotation, Suicide As Compensable Under Workmen's Compensation Act (1967), 15 A.L.R. 3d 616, 631.

As succinctly stated in the above-quoted annotation, the chain-of-causation rule "* * * appears to be most in accord with the general socioeconomic purpose of the workmen's compensation statutes, which is to provide financial and medical benefits to the victims of 'work-connected' injuries and their families — regardless of fault — which any enlightened community would feel obliged to provide in any case, and to allocate the financial burden to the most appropriate source, the employer, and, ultimately, the consumer of the product." *Id.*

In fashioning a satisfactory standard to replace *Brubaker,* we also look to the experience of other major industrial states which are similar in many respects to Ohio. In so doing, we find that states such as Michigan,[1] California,[2] and New York[3] have adopted some form of the "chain-of-causation" test. Nevertheless, in reviewing the standards adopted by our sister states, we are most persuaded by the standard embraced by the Pennsylvania Supreme Court in *Globe Security Systems Co.* v. *Workmen's Comp. Appeal Bd.* (1988), 518 Pa. 544, 544 A. 2d 953.

Prior to the decision in *Globe,* the Pennsylvania rule regarding the compensability of a suicide, although somewhat inconsistently applied, was that such a death was compensable where the suicide occurred while the employee was possessed by an uncontrollable and insane impulse, or while

---

[1] See, *e.g., Hammons* v. *Highland Park Police Dept.* (1984), 421 Mich. 1, 364 N.W. 2d 575.

[2] See, *e.g., Burnight* v. *Indus. Acc. Comm.* (1960), 181 Cal. App. 2d 816, 5 Cal. Rptr. 786.

[3] See, *e.g., Delinousha* v. *Natl. Biscuit Co.* (1928), 248 N.Y. 93, 161 N.E. 431. The New York standard is somewhat of a deviation from most chain-of-causation standards since its emphasis is on a showing of genuine "brain derangement," as opposed to mere melancholy or discouragement. Larson, *supra,* at 6-163, Section 36.30.

in a delirium or frenzy. *Lupfer* v. *Baldwin Locomotive Works* (1921), 269 Pa. 275, 112 A. 458. In *Globe,* however, the Pennsylvania high court adopted what it characterized as a "more enlightened approach[,]" approving a test established by a Pennsylvania lower court and setting forth the following necessary elements to receive compensation for a suicidal death:

"(1) [The claimant must prove] that there was initially a work-related injury as defined by Section 301 of the Act; (2) which injury directly caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) which disturbance resulted in the employee's suicide." *Id.* at 552, 544 A. 2d at 957, citing *McCoy* v. *Workmen's Comp. Appeal Bd.* (1986), 102 Pa. Commw. 436, 440, 518 A. 2d 883, 884-885.

It should be noted here that at least one Ohio lower court correctly, albeit *sub silentio,* ignored the *Brubaker* "fixed purpose" standard. See *Burnett* v. *Indus. Comm.* (1949), 87 Ohio App. 441, 56 Ohio Law Abs. 471, 43 O.O. 198, 93 N.E. 2d 41. "chain-of-causation" approach is more logical and enlightened in determining cases involving a suicide that is alleged to be the proximate result of a work-related injury. Such a standard is abundantly permissible given the General Assembly's statutory directive to liberally construe the workers' compensation provisions, R.C. 4123.95, and is most consistent with the constitutional purpose of workers' compensation, which is to "provid[e] compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *." Section 35, Article II, Ohio Constitution.

Therefore, in overruling *Brubaker, supra,* to the extent inconsistent herewith, we hold that in order for dependents to recover workers' compensation benefits for a death by suicide, they must establish by a preponderance of the evidence that (1) there was initially an injury received in the course of, and arising out of, the employee's employment as defined by R.C. 4123.01(C); (2) the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) the disturbance resulted in the employee's suicide.

While the foregoing standard is somewhat similar to that urged upon us by the appellee administrator, we remand the cause for further proceedings because a careful review of the record indicates that appellant did not have the opportunity to present evidence, expert or otherwise, concerning the decedent's state of mind under the standard adopted herein.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to the Industrial Commission for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.