BANKS, Appellant,

v.

LTV STEEL COMPANY et al., Appellees.

[Cite as *Banks v. LTV Steel Co.* (1995), 100 Ohio App.3d 585.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66569.

Decided Feb. 22, 1995.

*Donald E. Lampert,* for appellant.

*Willacy & LoPresti* and *Aubrey B. Willacy,* for appellee LTV Steel Co.

*Betty D. Montgomery,* Attorney General, and *James P. Mancino,* Assistant Attorney General, for appellee Industrial Commission.

HARPER, Judge.

Appellant, Rita Banks, appeals from the summary judgment granted by the Cuyahoga County Court of Common Pleas in her claim for workers' compensation against appellees, LTV Steel Company (LTV), and the Industrial Commission of Ohio (the "commission"), and the Bureau of Workers' Compensation. For the reasons that follow, we reverse and enter judgment for appellant.

I

On April 21, 1986, appellant, an employee of LTV, was struck by a large steel panel and was pinned underneath. She was taken to the hospital for treatment of the injuries she sustained. Appellant's injuries were recognized by the commission for having suffered "chest contusion, cervical and lumber myfascitis, [*sic* ] contusion left forearm and contusion left leg."

On April 26, 1988, appellant filed for additional recognition for a post-traumatic stress disorder arising from the injury she suffered on April 21, 1986. The commission referred appellant to a psychiatrist, Dr. Patricia Martin. Dr. Martin, after examining appellant, diagnosed her as suffering from post-traumatic stress disorder. Dr. Walter Knake, Ph.D., a clinical psychologist who treated appellant in 1992, confirmed Dr. Martin's diagnoses.

The record shows that appellant was first diagnosed for the post-traumatic stress disorder on April 1, 1988 by Dr. David Fero.

The commission allowed appellant's claim for post-traumatic stress disorder. LTV challenged the claim, arguing that post-traumatic stress disorder is not a "flow through" disorder, but one which arises directly and independently from the fear-causing event itself, and therefore, not compensable. LTV, in its motion for summary judgment, also argues that since appellant's injury was a direct consequence of the 1986 injury, it was time-barred.

## II

Appellant assigns the following error for our review:

"It was error for the Trial Court to grant LTV STEEL COMPANY's 'Motion to Dismiss or, in the Alternative, for Summary Judgment' because it constitute [*sic*] a misapplication of the Workers' Compensation Law to disputed facts."

Appellant in her sole assignment of error argues that the trial court erred in granting summary judgment based on appellees' contention that her claim was barred by the statute of limitations. Appellant argues that the trial court's interpretation implies that she knew of her condition five days after her injury.

The applicability of R.C. 4123.84 to "flow through" conditions is set forth in the Ohio Supreme Court decision in *Clementi v. Wean United, Inc.* (1988), 39 Ohio St.3d 342, 530 N.E.2d 909. The court held that:

"R.C. 4123.84 requires a claimant to file a motion for an additional allowance within two years of the time the claimant knew or should have known of the additional condition." See, also, *Edwards v. AT & T Technologies, Inc.* (1989), 42 Ohio St.3d 119, 537 N.E.2d 1305.

Applying *Clementi* and *Edwards* to the instant case we must determine whether appellant knew or should have known of the psychiatric condition more than two years prior to April 26, 1988. We think not. Appellees base their argument on the fact that appellant mentioned in a deposition that she had dreams about the accident shortly after the injury. Even if we go by the deposition testimony, we still do not believe that the record supports appellees' contention that appellant knew more than two years before she filed her complaint. Appellees attempt to support their argument by the following colloquy:

"Q. How often do you think about it?

"A. I be dreaming about it a lot.

"Q. How long has that been going on that you have been dreaming about it?

"A. I have been dreaming about that accident a lot of times, I mean almost ever since it happened I dream about it.

"Q. When you say almost ever since it happened, you mean like within the first few days after you come out of the hospital you started having dreams about it?

"A. I don't remember, but I know I had dreams about it, but I don't know if it was the first couple of days when I come out of the hospital or when it was. All I know is I started having dreams about it, and it just scared me.

" * * * * *

"Q. I know that they have a larry car up there.

"A. That's the larry car, yes. I got caught between the larry car and the railing to the systems, and it was just rolling me around in circles. It mashed my knees too. It had—my knees were bothering me.

"Q. Did you have any kind of psychological disturbance from that?

"A. No.

"Q. Is it your claim that it was the injury to your back that caused your psychiatric problem?

"MR. LAMPERT: Objection, ambiguous, which back injury?

"Q. The one in 1986.

"A. The one in 1986?

"Q. Yes.

"A. No, I think it is being up under that steel that make me, you know, dreaming and when I go in the stores and you know like if I am reaching for something, I think being up under there, that steel, it frightened me so much, that is what made me.

"Q. The being frightened part?

"A. Yeah, but as far as you saying my back?

"Q. Yes.

"A. My back bothering me anyways, it bothering me since I had this last accident, in 19—not only my back, 1986, not only my back, I been getting headaches, and my shoulders and things be bothering me.

"Q. But you don't have the feeling that you worried yourself into a psychological problem because of your shoulder hurting you or your neck hurting you or your back hurting you, do you?

"A. I don't know.

"Q. You don't know.

"The thing, as I hear what you are telling me, the thing that seems to be the big factor from what I have heard is your fear of being pinned down and the air being forced out of your body, is that right?

"A. I didn't—

"Q. The fear that you have of being close to death because you were pinned down and the air was being forced out of your body, that seems to be the big thing that triggered your psychological problem?

"A. Well, I wouldn't say, you know, like you mean with my back and stuff bothering me, my back and head and shoulders and things? I don't understand what you are saying.

"Q. Well what I'm trying to ask you is in your own mind, have you been able to determine to figure out what it is that makes you have this problem?

"A. You think that by me dreaming and at the stores with the shelves are you trying to say that that is what is causing my back and things to hurt, too, or what are you trying to say?

"Q. No, I'm asking you whether in your own mind you think—well, the reason that I keep thinking about this accident and having these fearful thoughts is because my back hurts so much?

"A. I think my back just—no, I be taking medication for my back and my head and stuff, I take medication.

"Q. So it is not because that hurts you so much that you have this problem?

"A. It is not that, that—say that again.

"Q. It is not that your back hurts you that you have the psychological problem?

"A. I don't think so.

"Q. It is not because of your head or your shoulder that you have the psychological problem in terms of the pain that you have?

"A. I don't know, I really don't really understand what you saying, because seem like you are not saying it right.

"Q. How would you think that I should be saying it?

"A. Okay. To me, to me it is different because my psychological thing to me it comes from being up under that steel and that frighten me, that frightened me a lot, and to me my pain is different from my psychological, from my fear, it is not I feel my pain, it is not—no, no that is not why, unt—un.

"Q. You have talked to Dr. Kanacki about what he thinks is the cause of your problem, your psychological problem, right?

"A. I have told him what I am experiencing.

"Q. Did he tell you what he thought it was, did he tell you a name to put on it?

"A. No, he didn't put no name on nothing.

"Q. Did Dr. Kanacki tell you what he thought was the cause of your psychological problem?

"A. No, he didn't tell me what he thought, no.

"Q. As you sit here right now, you don't have any problem with recognizing that there is a psychological problem, right?

"A. I do know I got a problem.

"Q. When was it that you, as you recall, that you first realized that you had a problem?

"A. The first time I started dreaming about it, but I can't tell you the date. I can't tell you the time because I don't remember.

"Q. Was it within a couple of months of the accident?

"A. Yeah, it was less than a couple of months because it started, I just started dreaming about it."

We fail to find any answer in the deposition testimony to support appellees' claim that appellant knew about her psychological condition two years prior to filing her claim. Assuming, *arguendo*, that the dreams are signals of her condition, her testimony indicates that she started having dreams less than two months after the accident. If the accident occurred on April 21, 1986 and she filed her second complaint on April 26, 1988, on the strength of her discovery of her condition less than two months after the accident[1] she was still within the two-year statutory limit. It is our conclusion that appellant's second complaint was timely filed.

Appellees advance a second argument that appellant's condition was not caused by her injuries but by perception of fear and could not qualify as a "flow through" condition. Appellees argue that appellant's condition is caused by mental stress and not by physical injury.

The settled law is that there must be an "injury" in order to receive compensation under the Workers' Compensation Act. *Rambaldo v. Accurate Die*

---

1. One month after appellant's accident would have been May 21, 1988, which would be almost one month before the two-year statute of limitations expired.

*Casting* (1992), 65 Ohio St.3d 281, 285, 603 N.E.2d 975, 978. In Ohio a worker who is disabled by a mental condition which was the result of a compensable work-related physical injury is entitled to compensation. *State ex rel. Anderson v. Indus. Comm.* (1980), 62 Ohio St.2d 166, 16 O.O.3d 199, 404 N.E.2d 153. However, a mental condition caused solely by mental or emotional stress is not a compensable injury. *Rambaldo, supra; Hayes v. Toledo* (1989), 62 Ohio App.3d 651, 577 N.E.2d 379.

■ *Rambaldo* involved a claim by an employee who charged that he suffered from major depression and mixed personality because his employer required him to do things which were dishonest or somewhat unethical. The Ohio Supreme Court held that:

"In the absence of a clearly expressed legislative intent to recognize mental conditions caused solely by work-related stress as occupational diseases within the purview of the Workers' Compensation Act, such mental conditions are not compensable as occupational diseases."

Thus, in order to recover workers' compensation benefits for a mental condition, the employee must establish by a preponderance of the evidence that (1) there was an injury received in the course of, and arising out of, the employee's employment as defined by R.C. 4123.01(C); and (2) the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal behavior. See *Borbely v. Prestole Everlock, Inc.* (1991), 57 Ohio St.3d 67, 565 N.E.2d 575.

■ In the instant case, it is uncontroverted that appellant suffered an injury in the course of, and arising out of her employment. Appellees also did not challenge the report of Dr. Fero, who diagnosed appellant's condition as instructed by the commission. The report reads in pertinent part as follows:

"Our final diagnoses were Chronic Cervical Thoracic and Lumbar Myositis, and to this I added Post Traumatic Stress Disorder. It was clear from the data we had accumulated that Ms. Banks was suffering with extreme anxiety and panic and that this was related to her experience of being injured and pinned and trapped by the panel and her fear at the time of that experience. To be fair there are other contributing factors including continuation on Valium over the year and one half which in my opinion would impede recovery. Also I believe Ms. Banks['] personality contributed to a predisposition to an anxiety disorder. But clearly [a] traumatic experience was the primary cause of both her anxiety disorder and her pain complaints, and the other factors only slowed or prevented her recovery.

"I believe Ms. Banks needs the help of a psychiatrist or psychologist experienced in treating anxiety disorders and chronic pain disorders. I would recom-

mend Dr. Phillip Fischer as someone experienced in this fashion. I will be happy to provide a referral to Dr. Fischer or to another Doctor at the request of Ms. Banks.

"David D. Fero, Ph.D.
Psychologist and
Clinical Director
Huron Hospital
Pain Management Center"

The plain reading of Dr. Fero's diagnosis shows that appellant's mental condition is directly linked to her April 21, 1986 injuries. If we accept appellees' reasoning, then workers' compensation is unavailable to an airline flight attendant who is injured in an airplane crash and later develops a mental condition because of the crash even though she no longer suffers physical pain from the crash. Such a narrow holding will not comport with the psychiatric exception the law allows.

We hold that the record supports appellant's claim as recognized by the commission that she suffers from compensable mental condition.

Appellant's sole assignment of error is sustained. The trial court's summary judgment in favor of appellees is reversed, and judgment is entered for appellant.

*Judgment accordingly.*

NAHRA, C.J., and MATIA, J., concur.