BAKER, Appellee,

v.

ADMINISTRATOR, OHIO BUREAU OF WORKERS'
COMPANSATION, Appellant.

[Cite as *Baker v. Ohio Bur. of Workers' Comp.* (2000), 140 Ohio App.3d 766.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000328.

Decided Dec. 15, 2000.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Eric S. Bravo,* for appellee.

*James Carroll* and *William Haders,* for appellant.

GORMAN, Judge.

This is an appeal from a judgment entered after a jury found that the plaintiff-appellee, Anita Baker, was entitled to participate in the Workers' Compensation Fund. The basis of Baker's claim against the fund was that her husband, Mark Baker, had killed himself because he was suffering from "a disturbance of the mind" resulting from a previous occupational injury. In his appeal, the Administrator argues that the trial court erred by (1) failing to grant his motion for a directed verdict, (2) precluding him from impeaching Baker with a previous conviction for theft against the bureau, and (3) denying his motion to stay the judgment pending this appeal. For the following reasons, we find none of the assignments of error meritorious and thus affirm.

Mark Baker was severely injured in an industrial accident that occurred in September 1979 when he was working for Tri–State Radio Tower Service. Baker was on a tower at a height of approximately eighty to ninety feet when the tower collapsed. Baker's head collided with the roof of a house as he fell.

Mark Baker was awarded workers' compensation benefits for a host of mental and physical conditions, including occipital neuralgia (headaches); porencephaly;

lumbosacral strain, post-traumatic neurosis and depression; seizure disorder; multiple lacerations; fracture of the left forearm; amputation of the tip of the right small finger; organic personality syndrome; right knee injury; and bilateral carpal tunnel syndrome.

Almost ten years later, on the night of March 5, 1998, a member of the Oxford, Ohio Police Department caught Mark Baker in the act of stealing from a locked minivan at a deserted construction site. When the officer attempted to frisk him, Baker reached under his clothes, retrieved a gun, pointed it at his side, and warned, "I'm going to kill myself. I'm going to shoot myself." To the officer's astonishment, he did. Although alive when rushed to a hospital, Baker later succumbed to his self-inflicted wound.

■ In his first assignment of error, the Administrator argues that the trial court should have granted his motion for a directed verdict because, even with the evidence viewed most strongly in favor of Baker, no reasonable juror could have found that Mark Baker's suicide was caused by psychological damage suffered in his occupational accident ten years earlier. See Civ.R. 50(A)(4). We disagree.

■ Although self-inflicted, an employee's death may result in benefits if the suicide results from the occupational injury. To establish the necessary causal connection, the evidence must show that (1) there was an occupational injury covered under the Act, (2) the occupational injury caused the employee to succumb to a "disturbance of the mind" sufficient to overcome normal rational judgment, and (3) the "disturbance of the mind" resulted in the employee's suicide. *Borbely v. Prestole Everlock, Inc.* (1991), 57 Ohio St.3d 67, 565 N.E.2d 575, syllabus.

According to the Administrator, there was no evidence presented to the jury upon which it could have reasonably found a causal relationship between the employee's state of mind and his work-related injury. In this regard, the Administrator challenges the deposition testimony of Anita Baker's expert witnesses, Dr. Beal Lowe, a clinical and rehabilitation psychologist who had reviewed certain medical records, and Dr. Fischer, one of Mark Baker's treating psychologists.

After reviewing the records of Mark Baker's treating psychologist, psychiatrist, and neurologist, Dr. Lowe testified that Mark Baker's headaches as a result of his occupational accident were a recurring problem that, toward the end of his life, was no longer effectively treated. He described the headaches as "chronic" and "significant." He also described Mark Baker's organic personality syndrome as a change in behavior arising from changes in the structure of the brain resulting from his occupational injury. He attributed symptoms of mood instabil-

ity, poor impulse control, outbursts of aggression, and apathy to Mark Baker's organic personality syndrome resulting from brain damage suffered during his fall from the tower.

Dr. Lowe further noted that Mark Baker had multiple unsuccessful suicide attempts after his industrial accident, whereas he had had none before. Dr. Lowe found significant the fact that Mark Baker, during the last several weeks prior to his suicide, had complained repeatedly to his treating psychologist of excruciating headaches causing him constant nausea.

Dr. Lowe was asked specifically if, to a reasonable degree of psychological certainty, Mark Baker's occupational injury had caused him to be "dominated by a disturbance of the mind of such severity as to override normal rational judgment." Dr. Lowe answered, "Yes." Dr. Lowe was then asked if, to a reasonable degree of psychological certainty, this disturbance of the mind resulted in his suicide. He replied, "Yes."

Similarly, Dr. Fisher testified on deposition that Mark Baker's head injury resulted from the occupational accident and that the resulting pain of that injury caused his multiple suicide attempts, including the last successful one.

The Administrator argues that both Dr. Lowe and Dr. Fisher were legally incompetent to testify on the cause of Mark Baker's suicide because they lacked medical degrees. In the Administrator's view, expert medical testimony was required to establish that the headaches of which Mark Baker complained prior to his suicide were related to his occupational injuries. We disagree. There was sufficient medical and anecdotal evidence of chronic headaches stemming from the accident for the jury to have inferred that the headaches tormenting Mark Baker at the time of his death were of the same type. Further, the Administrator's position assumes that the direct stimulus that precipitates an employee's suicide must necessarily be a physical symptom of the industrial accident. As we read *Borbely*, however, the question is not what stimulus immediately precipitated Mark Baker's suicide, but, rather, whether the psychological effect of his occupational accident caused him to react to the stimulus in a suicidal manner.

Without question, the occupational accident clearly had profound debilitating effects upon Mark Baker's mental and emotional state. As a result of the accident, he suffered from a host of psychological conditions, the primary symptoms of which were depression, anxiety, mood instability, apathy, and lack of impulse control. Both Drs. Lowe and Fisher came to the conclusion that Mark Baker's suicide was ultimately caused by this deterioration of his mental state. The jury found their conclusion credible and rejected the Administrator's position that Mark Baker would have killed himself even if he had not suffered psychological damage from the tower collapse.

■ We reject, furthermore, the Administrator's argument that, lacking medical degrees, the two psychologists were legally incompetent to express an opinion on the cause of Mark Baker's suicidal impulse. The medical diagnoses had already been made by medical doctors and allowed by the bureau; their existence was not disputed. Likewise, the psychological diagnoses were not disputed and had been previously allowed. The only question was whether these conditions caused Mark Barker to lose rational judgment and commit suicide. The query was not medical, but, rather, psychological. As trained psychologists, Dr. Lowe and Dr. Fisher were particularly qualified to express an opinion upon the matter.

In sum, we hold that Dr. Lowe and Dr. Fisher were competent to testify on the psychological cause of Mark Baker's suicide. Accordingly, construing the evidence in the light most favorable to Anita Baker, we hold that there was an appropriate basis upon which reasonable minds could conclude that all the elements of *Borbely* had been satisfied. The Administrator's first assignment of error is overruled.

■ In his second assignment of error, the Administrator argues that the trial court erred by refusing to allow him to impeach Anita Baker by revealing to the jury that she had been convicted of theft against the bureau. The offense arose from a dispute with the bureau over payments to her for Mark Baker's health care at home. Baker had apparently duplicitously received such payments during periods in which Mark Baker was hospitalized or incarcerated.

The Administrator argues that such impeachment should have been allowed under Evid.R. 609(A)(3). This rule renders admissible evidence that any witness has been convicted of a crime involving dishonesty or a false statement. But the admissibility of such evidence is expressly made subject to Evid.R. 403(A), which states that otherwise admissible evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The trial court allowed the Administrator to inform the jury only that Baker had a previous misdemeanor conviction for theft. The court expressly found that disclosure of the details of the offense, because it involved the bureau on a related matter, presented "an extreme danger" of unfair prejudice and jury confusion, thus outweighing its probative value.

The Administrator argues on appeal that the trial court erred because the excluded information was necessary to show that Anita Baker harbored a bias toward the bureau, a bias that would have led her to misrepresent matters to the psychologists, Drs. Lowe and Fisher, who had relied to a degree upon the histories she had given them.

■■ As the Ohio Supreme Court has made clear, the trial court has broad discretion under Evid.R. 403 in excluding evidence that would otherwise be admissible under Evid.R. 609. *State v. Wright* (1990), 48 Ohio St.3d 5, 548 N.E.2d 923; *State v. Amburgey* (1987), 33 Ohio St.3d 115, 515 N.E.2d 925. In fact, according to the syllabus of *Amburgey,* the court is vested with considerable discretion under Evid.R. 609, without resort to Evid.R. 403, to limit questioning of a witness "which asks more than the name of the crime, the time and place of conviction and the punishment imposed * * *."

Here, the trial court was obviously concerned that if the jurors were to have learned that Anita Baker's previous conviction involved fraud against the bureau, they would have found it difficult, if not impossible, to avoid the inference that her present claim also involved some element of fraud. In sum, the jurors would have been overwhelmingly tempted to use her previous conviction as a form of character evidence. Such use is forbidden by Evid.R. 404(B), which makes expressly clear that evidence of other crimes is "not admissible to prove the character of a person in order to show that he acted in conformity therewith."

■ As for the Administrator's argument that his intended use of the evidence was to show Anita Baker's "bias" against the bureau, such use does not strike us as distinct, in any appreciable way, from its use as character evidence. Clearly the "bias" that the Administrator wished to show was an inclination on the part of Anita Baker to cheat the bureau. The trial court refused to allow this use, correctly recognizing its corrosive effect on the jury's ability to decide the legal issues on their merits. It bears emphasis that, under Evid.R. 403(A), when the trial court finds that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the misleading of the jury, exclusion of the evidence is not discretionary, but mandatory.

We conclude, therefore, that the trial court did not abuse its discretion in limiting questioning about Anita Baker's previous conviction. The Administrator's second assignment of error is overruled.

■ In his third assignment of error, the Administrator argues that the trial court erred by denying his motion to stay the judgment pending appeal. According to the Administrator, he was entitled to an automatic stay under Civ.R. 62(B). Baker argues, on the other hand, that the matter of a stay was controlled by R.C. 4123.512(H), which states the following:

"An appeal from an order issued under division (E) of section 4123.511 of the Revised Code *or any action filed in court in a case in which an award of compensation has been made* shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of total disability

during the pendency of the appeal. If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund * * *." (Emphasis added.)

The Administrator argues that the emphasized language applies only to court cases in which the Industrial Commission has already determined that a claimant can participate in the fund "and then an employer appeals that decision into court." The Administrator's position, however, is clearly at odds with the plain meaning of the statute, which expressly makes the no-stay provision applicable to "any action filed in court," not just to an action filed by an employer contesting an allowed claim. In order to accept the Administrator's construction, "any action" would have to be given its opposite meaning, i.e., a certain type of action.

Furthermore, as Baker points out, the Administrator's position is undermined by R.C. 4123.512(G), which provides that "[i]f the finding of the court or the verdict of the jury is in favor of the claimant's right to participate in the fund, the commission and the administrator shall thereafter proceed in the matter of the claim as if the judgment were the decision of the commission."

Finally, the statutes must be read in conjunction with R.C. 4123.95, which provides that the workers' compensation statutes "shall be liberally construed in favor of the employees and the dependents of the deceased employees." As Baker points out, her construction of the statutes effectuates a recognized policy of affording benefits to a claimant immediately upon a determination in his or her favor.

We hold, therefore, that the trial court did not err by refusing to stay the judgment pending this appeal.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

Hildebrandt, P.J., and Sundermann, J., concur.