DECISION AND JUDGMENT ENTRY
On appeal appellants, Debbie Mickens, both individually and as the Administrator of the Estate of Timothy Mickens, and Shawn and Shannon Mickens, set forth the following three assignments of error:
 "ASSIGNMENT OF ERROR #1 "THE TRIAL COURT ERRED IN GRANTING [APPELLEES'] MOTION FOR SUMMARY JUDGMENT BASED UPON A DETERMINATION THAT THE INJURIES SUSTAINED BY THE DECEDENT TIMOTHY MICKENS WERE PURPOSELY SELF-INFLICTED AND THUS NOT COMPENSABLE PURSUANT TO R.C. 4123.54.
 "ASSIGNMENT OF ERROR #2 "THE TRIAL COURT ERRED IN MAKING THE DETERMINATION THAT TIMOTHY MICKENS SUFFERED FROM A MENTAL CONDITION CAUSED SOLELY BY MENTAL OR EMOTIONAL STRESS AND IS THUS NOT COMPENSABLE PURSUANT TO R.C. 4123.01(C) WHICH DEFINES INJURY, WHEN THE EVIDENCE PRESENTED BY APPELLANT SUPPORTS A FINDING THAT TIMOTHY MICKENS SUSTAINED AN INJURY PURSUANT TO RYAN V. CONNER. THIS CONSTITUTES A QUESTION OF FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT.
 "ASSIGNMENT OF ERROR #3 "THE TRIAL COURT ERRED IN FINDING THAT THERE MUST BE A COMPENSABLE INJURY THAT PRECEDES THE RESULTING `DISTURBANCE OF THE MIND' IN ORDER TO CONSTITUTE A COMPENSABLE SUICIDE PURSUANT TO BORBELY V. PRESTOLE EVERLOCK."
The facts that are relevant to the issues on appeal are as follows. The decedent in this case, Timothy Mickens, was an employee of UPS since 1972. In 1981, Mickens was promoted to a management position. In January 1994, Robert Rachko, the division manager, became Mickens' immediate supervisor. In 1995, UPS, in effort to reduce the size of its workforce, offered a buy-out to its management employees, including Mickens. After a conversation with Rachko concerning the security of his position at UPS, Mickens decided not to accept the buy-out.
On October 6, 1995, Mickens attended a managers' meeting at which Rachko was also present. One of the topics discussed at the meeting was the need to increase productivity. On October 8, 1995, two days after the meeting, Mickens hanged himself in the garage of his home.
In October 1997, appellants filed an application for workers' compensation death benefits in which they asserted that Mickens "committed suicide as the direct result of exposure to unusual and overwhelming stress in the workplace." The claim was denied at every administrative level. On July 28, 1999, appellants filed an appeal to the Lucas County Court of Common Pleas pursuant to R.C. 4123.512.
On August 1, 2000, UPS filed a motion for summary judgment and a memorandum in support, in which it argued that, as a matter of law, appellants are not entitled to death benefits as result of Mickens' intentional act of suicide. UPS further argued that appellants could not show Mickens' alleged stress was preceded by a compensable, work-related injury, that the alleged stress was greater than that experienced by other UPS employees, or that it was the proximate cause of Mickens' death by suicide.
On August 18, 2000, appellants filed a memorandum in opposition to summary judgment, in which they asserted that Mickens' suicide was caused by work-related stress, and that death benefits for a suicide are not precluded by law merely because decedent's injuries were "contemporaneous with and not precedent to the suicide * * *." Attached to appellants' memorandum were affidavits by appellant Debbie Mickens, Stanley M. Zupnick, Ph.D., UPS employees, Michael Snyder and Gregory Hansen, Mickens' brother, David Mickens, parts of the deposition testimony of Robert Rachko, appellants Shawn and Shannon Mickens, and Mickens' neighbor, Denise Naibor.
Statements contained in the affidavits of appellants, David Mickens and Naibor all indicate that, in the months before his death, Mickens was experiencing some anxiety about his job, and that he expressed concern that he could not please his boss, Rachko. Debbie Mickens stated that her husband experienced "increasing signs of stress" after August 1994, including working long hours on weekdays, working extra hours on Saturdays, and being sick on Sunday nights in anticipation of returning to work on Monday morning. She further stated that Mickens argued with her and other family members on the day that he died.
Snyder and Hansen stated generally in their affidavits that UPS is greatly concerned with productivity and, as a result, a lot of pressure is put on managers such as Mickens. In his affidavit Dr. Zupnick concluded, after interviewing Debbie Mickens and reviewing the affidavits of David Mickens, Naibor and several "former United Parcel Service employees," that Mickens' suicide was "substantially caused" by a "disturbance of the mind" brought on by the unusual stress that he experienced in the course of his employment with UPS.
On September 5, 2000, the trial court filed a judgment entry in which it found that appellants are not entitled to death benefits, because the record does not contain facts sufficient to demonstrate that Mickens' death was due to anything other than a self-inflicted injury, which is not eligible for workers' compensation death benefits under Ohio law. On September 11, 2000, a timely notice of appeal was filed.
Appellants' three assignments of error will be considered together, since they assert in all three that the trial court erred by granting appellees' motion for summary judgment.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
R.C. 4123.54(A) states, in pertinent part:
 "Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:
"(1) Purposely self-inflicted;
* * *
 "is entitled to receive * * * compensation for loss sustained on account of the injury, occupational disease or death * * *."
The term "injury" is defined at R.C. 4123.01(C) as:
 "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. `Injury' does not include:
 "(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease * * *."
In Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, the Supreme Court of Ohio, interpreting R.C. 4123.01(C), held that, "for the purposes of R.C. Chapter 4123, psychiatric conditions that do not result from a physical injury do not constitute an `injury.' Thus, those psychological injuries are not included in the purview of the statute." Id. at 464. See also,Bailey v. Republic Engineered Steels, Inc. (2001), 91 Ohio St.3d 38 (A psychiatric injury which develops after a coworker witnesses or causes a coworker's physical injury may be compensable. Id. at 42.) Accordingly, before a claim for workers' compensation benefits can be allowed pursuant to R.C. 4123 for a worker's psychiatric condition, the claimant must demonstrate that a nexus exists between that condition and some physical injury which is not self-inflicted, and which arose in the course of employment.
Appellants first assert that appellees are not entitled to summary judgment because an issue of fact exists as to whether Mickens' injuries were purposely self-inflicted, or arose due to a disturbance of the mind caused by stress at work. Appellants further assert that the physical injury which caused Mickens' death need not precede the psychological condition which led him to commit suicide in order for his death to be compensable.
In Borbely v. Prestole Everlock, Inc. (1991), 57 Ohio St.3d 67, a claim for workers' compensation death benefits was made after a worker committed suicide. In that case, the Supreme Court of Ohio held that:
 "[i]n order for dependents to recover workers' compensation benefits for a death by suicide, they must establish by a preponderance of the evidence that (1) there was initially an injury received in the course of, and arising out of, the employee's employment as defined by R.C. 4123.01(C); (2) the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) the disturbance resulted in the employee's suicide." Id., syllabus.
The record does contain evidence that Mickens experienced at least some stress during his employment at UPS. However, in order to remove the statutory exception for self-inflicted injuries as set forth in Borbely,supra, a deceased worker must first have suffered a physical injury prior to developing a stress-related disturbance of the mind that resulted in his or her suicide.
It is undisputed that the physical injury experienced by Mickens occurred after he allegedly experienced stress at work. It is further undisputed that Mickens suffered no physical injury other than the one that caused his death. Accordingly, absent the presence of an initial, work-related physical injury the exception created in Borbely, supra, for a worker's suicide does not apply, and the issue of whether or not Mickens suffered a disturbance of the mind is irrelevant in this case.
Appellants further assert that Mickens' death is compensable under Ryanv. Connor (1986), 28 Ohio St.3d 406, because he experienced work-related stress, resulting in a physical injury that caused his death. It is undisputed that the only physical injury suffered by Mickens was a fractured left horn of the thyroid cartilage, sustained when he hanged himself with an electrical cord in his garage on October 8, 1995.
In Ryan, supra, a claim was made for workers' compensation benefits due to a worker's heart attack caused by extreme work-related stress. The Supreme Court subsequently held that "[a] physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C)." Id., paragraph one of the syllabus.
Ryan, supra, was decided five years prior to Borbely. As noted by the trial court, Ryan's holding has not been found to extend Borbely, supra, to allow workers' compensation death benefits in cases where a worker's suicide would otherwise be uncompensable because the worker suffered no initial injury as defined by R.C. 4123.01(C) and Bunger, supra. Accordingly, Ryan, supra, does not apply in this case.
Upon consideration of the foregoing, this court finds that there remains no genuine issue of material fact and, even when construing the evidence that was properly before the trial court most strongly in favor of appellants, reasonable minds can only conclude that appellees are entitled to summary judgment as a matter of law. Appellants' three assignments of error are not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellants.
 ______________________ Melvin L. Resnick, J.
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.