DECISION *Page 625 
{¶ 1} Relator, Kohl's Department Stores ("Kohl's"), has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied Kohl's motion to terminate temporary total disability compensation, and to enter an order granting such relief.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be granted. Respondent-claimant, Mary L. Kolter, has filed an objection to the magistrate's decision.
 {¶ 3} The magistrate concluded that the report of Mr. Bertner, on which claimant relied, is not some evidence to support continued temporary total disability compensation because Bertner, a psychologist, expressed an opinion on medical issues. In his August 30, 2001 report, Bertner stated:
 {¶ 4} "In my view * * *, Ms. Kolter has not yet reached MMI.
 {¶ 5} "I can not see Ms. Kolter returning to her job until her headaches are better controlled. Until these daily reminders of her ordeal are managed better she has more reason to be depressed. I also believe that these headaches are slowing her further recovery. * * *
 {¶ 6} "I do not see that Ms. Kolter's depression is in remission. * * *"
 {¶ 7} As a psychologist, Bertner was qualified to express an opinion as to whether claimant's allowed condition of depression had reached maximum medical improvement. The fact that Bertner may have considered her depression to find its source in a medical condition, here, claimant's headaches should not necessarily preclude consideration of his report as to the psychological aspects of her claim. Thus, we find claimant's objection to be well-taken.
 {¶ 8} Upon a review of the magistrate's decision and an independent review of the file, this court adopts the magistrate's decision but rejects the conclusions of law that there was no evidence upon which the commission could rely to continue temporary total disability compensation. We grant a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied Kohl's motion to terminate temporary total disability compensation and to enter a new order which grants or denies such compensation and sets forth the evidence upon which the commission relies.
Objection sustained, writ of mandamus granted.
TYACK and DESHLER, JJ., concur. *Page 626 
 APPENDIX IN MANDAMUS {¶ 9} In this original action, relator, Kohl's Department Stores ("Kohl's"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying Kohl's July 19, 2001 motion to terminate temporary total disability ("TTD") compensation, and to enter an order granting said motion.
Findings of Fact:
 {¶ 10} 1. On January 11, 1997, respondent Mary L. Kolter ("claimant") was employed as a "loss prevention supervisor" for Kohl's at one of its department stores located in Columbus, Ohio.
 {¶ 11} 2. On January 11, 1997, claimant chased a female shoplifter out the door and to the rear of the building where she was assaulted by two male accomplices with stun guns. She lay unconscious on the ground for approximately ten minutes before she was found. She was transported to the emergency room at Riverside Methodist Hospital.
 {¶ 12} 3. Kohl's is a self-insured employer under Ohio's workers' compensation laws. Kohl's certified the industrial claim which was initially recognized for: "right foot sprain, right ankle sprain, right foot contusion, right ankle contusion."
 {¶ 13} 4. In February 1997, claimant began treating with psychologist Warren L. Bertner, M.Ed. In a report dated June 23, 1997, Mr. Bertner opined that claimant was suffering from "Major Depression" and "Post-Traumatic Stress Disorder" caused by her industrial injury.
 {¶ 14} 5. On June 16, 1997, claimant was examined by Lisa P. Fugate, M.D., who opined that claimant "meets the criteria for post-traumatic stress disorder."
 {¶ 15} 6. On July 18, 1997, citing to the reports of Mr. Bertner and Dr. Fugate, claimant moved that her claim be additionally allowed for major depression and posttraumatic stress disorder.
 {¶ 16} 7. On November 10, 1997, Mr. Bertner certified TTD on form C-84 due to posttraumatic stress disorder beginning February 5, 1997.
 {¶ 17} 8. Following a November 19, 1997 hearing, a district hearing officer ("DHO") issued an order additionally allowing the claim for posttraumatic stress disorder but disallowing the claim for major depression. The DHO also awarded TTD compensation "from 04/14/1997 through 11/19/1997 based on Dr. [sic] Bertner's C-84 on file and shall continue upon submission of proof supportive of temporary total disability." *Page 627 
 {¶ 18} 9. Kohl's administratively appealed the DHO's order of November 19, 1997. Following a January 21, 1998 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order.
 {¶ 19} 10. Kohl's and claimant administratively appealed the SHO's order of January 21, 1998 to the commission. Following a March 19, 1998 hearing before the three-member commission, the commission issued an order stating that the SHO's order was being modified. The commission further allowed the claim for major depression based upon Mr. Bertner's June 23, 1997 report. The order also stated that "temporary total compensation is to continue as previously granted."
 {¶ 20} 11. In the meantime, during 1997 and 1998, claimant was treated by Miles E. Drake, Jr., M.D.[1] At that time, Dr. Drake was an associate professor of neurology and psychiatry at the Ohio State University. Through a written interrogatory, Dr. Drake was asked to state the diagnosis of the condition for which he was treating claimant. Dr. Drake wrote: "post-concussion syndrome, sequelae of electrical injury to the central nervous system." Dr. Drake also linked the condition being treated to the industrial event of January 11, 1997.
 {¶ 21} 12. On August 29, 2000, Mr. Bertner wrote:
 {¶ 22} "In later 1997 she began to see Dr. Drake at OSU who evaluated her tremors, numbness, migraines, and physical coordination problems. I continued to see her for anxiety, depression, and post-traumatic stress. Dr. Drake placed her on anti-seizure medication like Depakote, and Tegretol. She was also placed on Remeron, Prozac, and Topamax. She continued to report migraines with the medication, but the medications brought them down to a less intense level."
 {¶ 23} 13. On June 28, 2000, citing Dr. Drake's office notes and responses to interrogatories, claimant moved for an additional claim allowance.
 {¶ 24} 14. Following an August 30, 2000 hearing, a DHO issued an order additionally allowing the claim for "post-concussion syndrome sequelae of electrical injury to the central nervous system" based upon the medical evidence from Dr. Drake and Mr. Bertner's August 29, 2000 report.
 {¶ 25} 15. Kohl's administratively appealed the August 30, 2000 DHO's order. Following an October 5, 2000 hearing, an SHO issued an order affirming the DHO's order of August 30, 2000.
 {¶ 26} 16. In the meantime, on August 11, 2000, claimant was examined by psychologist Lee Howard, Ph.D., on behalf of Kohl's. Dr. Howard opined: *Page 628 
 {¶ 27} "There is really no objective evidence that would prohibit the claimant from returning to her previous type of employment. Any inability to do so would be based upon subjective complaints only.
 {¶ 28} "* * *
 {¶ 29} "* * * [T]he claimant has reached maximum medical improvement. She has had psychotherapy continuously for two and a half years and psychotropic medications. Her symptoms are minimal and/or significantly improved." (Emphasis sic.)
 {¶ 30} 17. On October 2, 2000, Mr. Bertner authored a four page report critical of Dr. Howard's August 11, 2000 report. Mr. Bertner concluded:
 {¶ 31} "I believe that Ms. Kolter continues to be depressed although less so. She admits to feeling better and this is documented.
 {¶ 32} "Ms. Kolter's Post-traumatic Stress Disorder is under better control. She is having some flashbacks but these are now coming weekly rather than daily. She is not in full remission but shows slow improvement.
 {¶ 33} "Ms. Kolter has not reached MMI in terms of her Depression or her PTSD her two previously recognized conditions. Both conditions continue to improve slowly.
 {¶ 34} "Ms. Kolter's neurological condition is neither mild nor the result of `iatrogenic' factors. It may be the case that or[g]anic factors are handicapping her recovery but only so far clinical data supports this assertion."
 {¶ 35} 18. On April 30, 2001, Debra A. Grayson, D.O., completed a C-84 certifying TTD beginning April 26, 2001. The C-84 form asks the examining physician to "[l]ist ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response, Dr. Grayson wrote "296.20 Depress[ion] Psychosis." Dr. Grayson listed "Depression, PTSD" for her objective clinical findings. The C-84 form poses the following queries:
 {¶ 36} "Has the work related injury(s) or disease reached a treatment plateau at which no fundamental functional or physiological change can be expected despite continuing medical or rehabilitative intervention? (Maximum Medical Improvement) * * * If no, indicate any barriers preventing normal recovery, or maximum medical improvement. * * *"
 {¶ 37} In response to the first query, Dr. Grayson marked the "No" box. In response to the second query, Dr. Grayson wrote "Needs To See Neuro."
 {¶ 38} 19. On June 18, 2001, in response to a request for information from Kohl's workers' compensation service company, Mr. Bertner wrote: *Page 629 
 {¶ 39} "I do not have a prospective date for Kolter to return to work. I am fairly confident that she will not return to Kohl's as a Loss Prevention Supervisor. I do not believe she will return to Kohl's in a light duty capacity. I do not believe that maximum medical recovery has been obtained. My opinion is based first on the slow recovery process she exhibits and the intrusion of what I consider to be neurological obstacles in her daily experience — confusion, migraine pain, unpredictability in her ability to execute the activities of daily life.
 {¶ 40} "In order to better assess and treat Ms. Kolter's medical condition as opposed to a more behavioral/psychological approach, I have asked Ms. Kolter to transfer the physician of record from myself to Debra Grayson, M.D. I feel Dr. Grayson is better equipped to evaluate, treat and overcome Ms. Kolter's remaining obstacles to employment.
 {¶ 41} "Ms. Kolter's condition in my opinion is not stable enough to allow her to return to gainful employment or be involved in a rehabilitation program.
 {¶ 42} "I believe that all of her medical conditions together preclude her resuming employment. She would personally prefer to work if she could. No outside obstacles unrelated to her attack stand in the way as far as I am aware.
 {¶ 43} "My plan of treatment has been consistent with treating her anxiety and depression. Supportive cognitive-behavioral counseling has been utilized. As it has become clear to me that neurological pain as distinct from psychological trauma is a significant factor in her condition, I have counseled her to use a M.D. as her primary treating professional with myself as secondary."
 {¶ 44} 20. On August 22, 2001, claimant moved that Dr. Grayson be recognized as her treating physician of record for her physical conditions and that Mr. Bertner be recognized as the treating doctor for her psychological conditions.
 {¶ 45} 21. Following an October 31, 2001 hearing, a DHO issued an order granting claimant's August 22, 2001 motion. The DHO's order states:
 {¶ 46} "The District Hearing Officer recognizes Dr. Grayson as the physician of record for the allowed physical conditions of the claim. * * *
 {¶ 47} "Psychologist Bertner remains authorized to treat the allowed psychological conditions of the claim."
 {¶ 48} 22. Apparently, the October 31, 2001 DHO's order was not administratively appealed.
 {¶ 49} 23. In the meantime, on June 22, 2001, claimant was again examined by Dr. Howard on Kohl's behalf. Dr. Howard reported:
 {¶ 50} "This individual demonstrates normal mental status results and/or even improved mental status results when compared with the earlier evaluation. *Page 630 
Thus, there is no evidence of any alteration in her mental functioning as a result of her injury.
 {¶ 51} "* * *
 {¶ 52} "Her MMPI test results over two different settings indicate that compensatory factors are contributing to the clinical picture beyond simple psychopathological factors and this is not amenable to traditional psychological or psychiatric techniques.
 {¶ 53} "* * *
 {¶ 54} "The claimant is able to return to her previous type of work without restriction and/or modification. Any restrictions would be caused by physical symptoms and/or motivational factors.
 {¶ 55} "* * *
 {¶ 56} "The claimant has reached maximum improvement based upon multiple factors listed in the discussion/conclusions above.
 {¶ 57} "* * *
 {¶ 58} "Treatment has been somewhat excessive over the last year or so. The claimant should have been gradually phased out by this late date and reinforced for return to work activities, exploration of vocational options, and/or BVR contact. Prolonged treatment such as this four years after the injury is likely fostering dependency as opposed to independent or functional behavior."
 {¶ 59} 24. On July 19, 2001, citing Dr. Howard's June 22, 2001 report, Kohl's moved for a hearing "on the issue of MMI and termination of temporary total compensation."
 {¶ 60} 25. On August 30, 2001, Mr. Bertner authored a four page report critical of Dr. Howard's reports of August 11, 2000 and June 22, 2001. Mr. Bertner's report states:
 {¶ 61} "Dr. Howard disagrees that Ms. Kolter's head injury is of any importance. He reports on p. 14 of his August, 2000 report that `There is unlikely to be neuropsychological sequelae as a result of this mild head injury.' On p. 14 of his June, 2001 report (#9) he repeats his assertion and believes that therapy itself or compensatory factors are maintaining her difficulties. This conclusion is reached in spite of his listing her medications including a high dose of Depakote, and the use of Carbatrol and Topamax — antiseizure medication and pain medication. With this judgement he puts himself at odds with the last industrial hearing that included Post Concussion Syndrome as part of her claim.
 {¶ 62} "Dr. Howard indicates what appear[s] to me [to be] inconsistent statements. He found Ms. Kolter to have reached MMI in August, 2000. He *Page 631 
then indicates on p. 14 #6 that she is actually doing better or so it appears to him from her earlier evaluation. I would like to believe that Dr. Howard is endorsing my view expressed in reports and on-going C-84s that my work with Ms. Kolter has shown slow but positive progress. I suspect in spite of his tally of my treatment sessions with her or his view that her condition will not respond to traditional psychiatric or psychological techniques that he is able to see that her activity level, comfort level, and mental status have improved in the last ten months.
 {¶ 63} "In my view and possibly in Dr. Howard's view, Ms. Kolter has not yet reached MMI.
 {¶ 64} "I can not see Ms. Kolter returning to her job until her headaches are better controlled. Until these daily reminders of her ordeal are managed better she has more reason to be depressed. I also believe that these headaches are slowing her further recovery. * * *"
 {¶ 65} 26. Following an August 31, 2001 hearing, a DHO issued an order denying Kohl's motion to terminate TTD compensation.
 {¶ 66} 27. Kohl's administratively appealed the DHO's order of August 31, 2001. Following an October 31, 2001 hearing, an SHO issued an order affirming the DHO's order. The SHO's order states:
 {¶ 67} "The Staff Hearing Officer has reviewed the evidence on file, including the employer's videotape evidence viewed at today's hearing, and finds that in her 08/31/2001 order, the District Hearing Officer correctly decided the issues presented.
 {¶ 68} "The Staff Hearing Officer affirms the finding that the claimant has not yet experienced maximum medical improvement for the allowed psychological conditions of the claim, based on psychologist Bertner's 06/18/2001 and 08/30/2001 reports so indicating. The employer contends that Dr. Howard's 06/22/2001 report, finding maximum medical improvement of the allowed psychological conditions, is the more accurate assessment of the claimant's extent of disability on a psychological basis, particularly in light of the claimant's activities documented on the videotape. The Staff Hearing Officer acknowledges that on the videotape, the claimant appears to be carrying out normal activities of daily living in contrast to some of the indications in psychologist Bertner's reports. However, the videotape essentially shows isolated periods of activity over the course of a total of five days between 03/06/2001 and 10/11/2001, and the Staff Hearing Officer is not persuaded that such periods of activity are sufficient in quality or quantity to negate psychologist Bertner's opinion that maximum medical improvement has not yet occurred. The Staff Hearing Officer further notes that Dr. Howard's 06/22/2001 report also indicates that there had been improvement *Page 632 
in the claimant's condition subsequent to the time of his prior examination of the claimant in November of 2000 [sic], at which time he had also indicated that maximum medical improvement had been reached. For these reasons, the Staff Hearing Officer finds that the claimant remains entitled to temporary total compensation."
 {¶ 69} 28. On November 29, 2001, another SHO mailed an order refusing Kohl's administrative appeal from the SHO's order of October 31, 2001.
 {¶ 70} 29. On February 15, 2002, relator, Kohl's Department Stores, filed this mandamus action.
Conclusions of Law:
 {¶ 71} The main issue is whether Mr. Bertner's reports of June 18, 2001 and August 30, 2001, constitute some evidence that the psychological conditions of the claim have not reached maximum medical improvement ("MMI").
 {¶ 72} Finding that Mr. Bertner's reports lack some evidence upon which the commission can rely to support its finding that the psychological conditions of the claim have not reached MMI, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 73} R.C. 4123.56(A) provides for the payment of TTD compensation. It also provides that payment shall not be made for the period "when the employee has reached the maximum medical improvement."
 {¶ 74} Supplementing the statute, Ohio Adm. Code 4121-3-32(A)(1) states:
 {¶ 75} "`Maximum medical improvement' is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function."
 {¶ 76} In State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 653, the court states:
 {¶ 77} "* * * Maximum medical improvement is equatable with the concept of permanence. * * * It `relates solely to the perceived longevity of the condition at issue [and not to] the claimant's ability to perform the tasks involved in his former position of employment * * *. [It is defined] as a condition which will, "* * * with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom."' (Citation omitted.) Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31, 33, 25 OBR 26, 27,494 N.E.2d 1125, 1127. Thus, so long as the claimant's condition has not stabilized, and further medical improvement can be expected, TTD benefits are payable. * * *" *Page 633 
 {¶ 78} In his June 18, 2001 report, Mr. Bertner opines that MMI has not been obtained. He states that his opinion is based upon the "slow recovery process she exhibits and the intrusion of * * * neurological obstacles in her daily experience — confusion, migraine pain, unpredictability in her ability to execute the activities of daily life." In order to better assess and treat claimant's medical condition, Mr. Bertner asked claimant to request that Dr. Grayson be recognized as the physician of record. Mr. Bertner ends his June 18, 2001 report by stating that it has become clear to him that "neurological pain as distinct from psychological trauma is a significant factor in her condition." Mr. Bertner recommends that Dr. Grayson become claimant's primary treating doctor with himself as secondary.
 {¶ 79} In his August 30, 2001 report, immediately following his opinion that "Ms. Kolter has not yet reached MMI," Mr. Bertner states:
 {¶ 80} "I can not see Ms. Kolter returning to her job until her headaches are better controlled. Until these daily reminders of her ordeal are managed better she has more reason to be depressed. I also believe that these headaches are slowing her further recovery. * * *"
 {¶ 81} The magistrate notes that three years earlier, on September 28, 1998, Mr. Bertner wrote:
 {¶ 82} "I have consistently certified her as depressed since January, 1997 and this condition continues. The part of her dysfunction which I suspect is neurologically based is under Dr. Drake's supervision and treatment."
 {¶ 83} As his June 18, 2001 and August 30, 2001 reports indicate, Mr. Bertner's opinion that the psychological conditions have not reached MMI is premised upon his belief that claimant's headaches can be better controlled with proper medical treatment. The problem is there is no time relevant competent medical evidence of record showing that claimant's headaches can be better controlled or that any of her neurological conditions can be improved.
 {¶ 84} The record here indicates that Dr. Drake did not treat claimant beyond 1998. And, as Kohl's points out, there is no evidence from Dr. Grayson regarding assessment of the postconcussion syndrome or the headaches that are presumably symptomatic of that condition.
 {¶ 85} Significantly, Mr. Bertner is not competent as a licensed psychologist to himself opine upon the likelihood of improvement of the postconcussion syndrome or the headaches that are the focus of his MMI opinion. Baker v. Ohio Bur. of Workers' Comp. (2000), 140 Ohio App.3d 766.
 {¶ 86} In the absence of competent medical evidence to support his presumption that claimant's headaches or other neurological symptoms of postconcussion *Page 634 
syndrome can be better controlled, Mr. Bertner's MMI opinion is premised upon his own speculation as to the likelihood that the so-called "neurological obstacles" can be controlled or improved. See State ex rel. Simon v. Indus. Comm. (1994), 71 Ohio St.3d 186, 189 (the court refers to Dr. House's comments on the probability and extent of further improvement as "speculative"). As such, Mr. Bertner's opinion that the psychological conditions — posttraumatic stress disorder and major depression — have not reached MMI does not constitute some evidence upon which the commission can rely.
 {¶ 87} Given that Mr. Bertner's MMI opinion is not competent evidence, he cannot competently certify TTD based upon his MMI conclusion.
 {¶ 88} The commission's order does not address Dr. Grayson's C-84 certifying TTD beginning April 26, 2001. As previously noted, Dr. Grayson marked the "No" box on the C-84 to indicate that the industrial injury was not at MMI. She then added "Needs To See Neuro."
 {¶ 89} While Dr. Grayson is presumably competent to examine and opine upon the postconcussion syndrome, she has not indicated that she has done so. She recommends that the claimant see a neurologist for an evaluation of the neurological conditions. Thus, Dr. Grayson's opinion on MMI is also speculative because it assumes, without neurological evidentiary support, that claimant's psychological condition will improve if claimant is treated by a neurologist.
 {¶ 90} Without a competent certification of TTD in the record, there is no evidence upon which the commission can order TTD compensation to continue. Thus, the commission should have granted Kohl's July 19, 2001 motion to terminate TTD compensation. The TTD compensation should have been terminated effective August 31, 2001, the date of the district level hearing on Kohl's motion. State ex rel. Russell v. Indus. Comm. (1998), 82 Ohio St.3d 516.
 {¶ 91} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the October 31, 2001 order of its SHO denying Kohl's motion to terminate TTD compensation, and to enter an order terminating TTD compensation effective the date of the August 31, 2001 DHO's hearing.
[1] Dr. Drake's handwritten treatment notes (office notes) are found in the record before this court. *Page 635