OSBORN, Appellant,

v.

OHIO BUREAU OF WORKERS' COMPENSATION et al., Appellees.

[Cite as *Osborn v. Ohio Bur. of Workers' Comp.* (1999), 134 Ohio App.3d 645.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17433.

Decided Aug. 20, 1999.

*Deborah J. Adler* and *Donald K. Scott,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Steven P. Fixler,* Assistant Attorney General, for appellee Ohio Bureau of Workers' Compensation.

*Edna V. Scheuer, Scott A. King* and *Christine M. Haaker,* for appellee Delco Chassis Systems, n.k.a. Delphi Automotive Systems LLC.

FAIN, Judge.

Plaintiff-appellant, Spidola Osborn, appeals from a denial of workers' compensation widow's benefits. Appellant's application for benefits was denied administratively, and the denial was upheld by the Montgomery County Common Pleas

Court. Appellant contends that the trial court erred by rendering summary judgment against her because there were genuine issues of material fact regarding whether her husband's death was purposely self-inflicted and whether it was proximately caused by his work-related condition.

We conclude that the trial court did err by rendering summary judgment because the evidence presented does raise a genuine issue of fact whether Ronald Osborn's death was purposely self-inflicted. However, we need not reach the issue of proximate cause, upon which the trial court has not ruled. Accordingly, the judgment of the trial court is *reversed* and this cause is *remanded* for further proceedings.

I

Ronald Osborn was employed by Delphi Automotive Systems LLC ("Delphi") in the "lite flex springs department." During the course of his employment, Osborn developed "chronic right thumb ligamentous instability with traumatic arthritis" and left elbow cubital tunnel syndrome. He underwent several surgeries in 1993 to correct the thumb condition.

On January 7, 1994, Osborn underwent another surgical procedure to correct the left elbow condition.[1] Following the operation, his surgeon prescribed a pain medication. However, Osborn reacted adversely to the medication and requested an alternative pain reliever. When Osborn's wife, appellant herein, attempted to contact his surgeon, she was informed that he was unavailable and was referred to the surgeon's partner, who issued a prescription for MS Contin, a morphine derivative. The doctor prescribed fourteen pills with instructions to take one pill every twelve hours.

Osborn began to take the MS Contin on January 7, and continued to take the medication through at least January 10. On at least one occasion, appellant observed Osborn attempting to take another pill only hours after he had taken one. Appellant instructed Osborn to take the medication as prescribed. Suspecting that Osborn had taken more pills than prescribed, appellant counted the remaining pills in the bottle. She testified that more pills were missing than should have been, thereby confirming her suspicion that Osborn had exceeded the prescribed dosage. On Monday, January 10, appellant noted that Osborn was starting to slur his words and was having trouble lighting his cigarettes. She again told him to take his medication as prescribed. On January 11, appellant left on an overnight business trip. When she left the home, Osborn was still asleep. When she returned home the next day, she discovered that Osborn had

---

1. The parties stipulated that Ronald developed the condition of "left cubital tunnel syndrome" in the course of and arising out of his employment.

died.  An autopsy was performed by the Montgomery County Coroner, revealing that Osborn died as a result of morphine intoxication.

Appellant filed an application for widow's benefits, seeking to participate in the benefits of the Workers' Compensation Act as a surviving spouse.  The claim was denied, and appellant filed a complaint in the Montgomery County Common Pleas Court.  Subsequently, Delphi filed a motion for summary judgment on the basis that Osborn's death was purposely self-inflicted and not proximately caused by his work-related injury.  The trial court granted the motion, finding that Osborn's death was purposely self-inflicted because he intentionally exceeded the recommended medication dosage.  The trial court also ruled that the issue of proximate cause was rendered moot because of its disposition of the issue of purposeful self-infliction.

From this judgment, the widow appeals.

## II

Appellant's First Assignment of Error states as follows:

"The trial court erred in concluding that Ronald Osborn's death was purposely self–inflicted under O.R.C. 4123.54(A)."

Appellant contends that the trial court erred in ruling that she was not entitled to widow's benefits pursuant to the Workers' Compensation Act.  She also contends that the trial court erred in finding that Ronald Osborn's death was purposely self-inflicted.

Pursuant to R.C. 4123.54, injuries that are "purposely self-inflicted" are not compensable under the Workers' Compensation Act.  The trial court, in ruling that Ronald Osborn's death was purposely self-inflicted, relied upon the decision of the Tenth Appellate District in *Vance v. Trimble* (1996), 116 Ohio App.3d 549, 688 N.E.2d 1049.  In *Vance*, the decedent was injured while employed by Ohio State University.  *Id.* at 550, 688 N.E.2d at 1049–1050.  Vance was taken to the student health center for an examination, where his treating physician prescribed thirty Darvocet capsules with instructions to take one pill every three to four hours for pain.  *Id.* Vance left work, went to a friend's house, and was observed to be "pretty much drunk."  *Id.* at 551, 688 N.E.2d at 1050.  At some point that evening, Vance was found dead.  The coroner's toxicology report indicated that Vance had approximately eighteen to twenty Darvocet capsules in his system at the time of his death.  *Id.*

Vance's widow's application for workers' compensation benefits was denied by the Industrial Commission and the Franklin County Common Pleas Court.  On appeal, the Tenth District Court of Appeals upheld the denial on the grounds that Vance's death was purposely self-inflicted.  The court found that Vance's death

was purposely self-inflicted because he voluntarily took an overdose of Darvocet. The court stated that Vance did not have to intend to die, but rather, he "must only have intended to take the prescribed medication in excess of the recommended dosage." *Id.* at 554, 688 N.E.2d at 1052. The court of appeals found that there was no evidence presented to suggest that Vance took the overdose other than voluntarily and, thus, there was no genuine issue of material fact for a jury to decide.

In the case before us, the trial court found that the evidence indicated that Osborn had intentionally exceeded the recommended dosage and, thus, there was no genuine issue of fact as to whether his death was purposely self-inflicted. Appellant's argument urges us to issue a ruling contrary to that in *Vance*. Specifically, appellant argues that the determinative issue under R.C. 4123.54 is not whether the pills were taken voluntarily, but whether the decedent intended to cause his death. We need not reach this particular issue, because we find this case distinguishable from the facts in *Vance*. The evidence in this case indicates that while Osborne may have taken as many as three extra tablets during the time between the initial prescription and his death, there is also evidence to indicate that the overdosing might have been accidental rather than intentional. In *Vance*, the evidence did not support a finding of an accidental overdose.

In this case, appellant presented an affidavit executed by the Montgomery County Coroner's Office forensic toxicologist, who performed toxicology tests on Ronald Osborn's body. In the affidavit, the toxicologist averred that "MS Contin is taken orally and it is not uncommon for individuals to unintentionally take more than prescribed." The toxicologist also stated that the drug has "an effect on the cognitive abilities and could lead to confusion over how many pills have been taken." Finally, the toxicologist stated that someone taking this particular drug "is not capable of determining when to take his medication."

We think that this evidence does raise a genuine issue of material fact as to whether Osborn intended to take an overdose of the MS Contin. The evidence presented could lead a jury to conclude that Osborn was confused and unaware that he was taking an overdose. Certainly negligence in taking a medication does not equal purposeful self-infliction of an injury. Therefore, we find that the trial court erred by rendering summary judgment.

Accordingly, appellant's first assignment of error is sustained.

### III

Appellant's second assignment of error is as follows:

"The trial court erred in granting summary judgment where genuine issues of material fact existed as to whether or not the death of Ronald Osborn was

proximately caused by his occupational condition for which he underwent surgery four days earlier."

Appellant contends that the trial court erred by granting summary judgment because genuine issues of material fact existed regarding whether Ronald Osborn's death was proximately related to his occupational condition.

We need not address this issue. The trial court did not rule on the issue of proximate cause because it found the issue was rendered moot by its disposition of the issue of whether the death was purposely self-inflicted. However, our disposition of the first assignment of error will require the trial court to address the issue of proximate cause on remand.

The second assignment of error is overruled.

## IV

Appellant's first assignment of error having been sustained, the judgment of the trial court is *reversed,* and this cause is *remanded* for further proceedings.

*Judgment reversed*
*and cause remanded.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.