OPINION
This appeal arises from the decision of the Court of Common Pleas of Hancock County granting summary judgment in favor of Meijer, Inc. (hereinafter referred to as "Appellee"). For the reasons expressed in the following opinion, we affirm the trial court's judgment.
The record shows that on December 6, 1998, then sixteen-year-old Brian L. Shope ("Appellant"), began working an eight hour shift at his job as a grocery bagger at one of Appellee's store locations. While working an eight hour shift, the baggers are afforded three separate breaks, one of which is designated for lunch. The employees are not aware of the specific time that they are to go on break prior to the commencement of work. Rather, a supervisor or manager will inform them of when to take a break during the course of the shift.
According to his deposition testimony, Appellant was clocked-in and bagging groceries at approximately 4:30 p.m. on the aforementioned date. At that time, Matt Johnson, Appellee's schedule operator for that day, told Appellant to take his lunch break. Immediately thereafter, Johnson changed his mind and instructed another bagger to go to lunch since he had been working longer hours. Appellant agreed with the change and continued to bag groceries.
Approximately thirty minutes later, for reasons not entirely clear, Appellant stated that Johnson again approached him, this time yelling that he was "stupid", "worthless" and "no good" because he hadn't gone on break yet. This reprimand, which lasted about two minutes, took place in front of customers and Appellant's co-workers. Appellant stated that he felt confused, embarrassed, and angry, but that he did not argue with his supervisor. Instead, Appellant walked about fifty feet away from the area, and punched a four- foot tall fiberglass display cabinet with his right hand. Appellant sought emergency treatment for the injury that night, and it was determined that his actions caused a fracture to the fifth metacarpal bone of his right hand. The evidence further shows that Appellant wore a cast for four weeks and missed approximately fifteen days of work because of the injury.
Appellant then filed a timely claim with the Bureau of Workers' Compensation. Upon learning that the Bureau denied the claim, Appellant appealed to the Industrial Commission. When the Industrial Commission refused to hear the appeal, Appellant initiated the present action in the trial court pursuant to R.C. 4123.512, requesting the court to find him entitled to participate in the Workers' Compensation Fund.
The case proceeded to the discovery phase until both parties filed cross-motions for summary judgment in August 2000. By way of entry dated September 14, 2000, the trial court granted summary judgment in Appellee's favor and dismissed Appellant's case. This appeal followed. Because we find it to be dispositive, we have chosen to address Appellant's final assignment of error first.
 VIII. The trial court committed prejudicial error by concluding that Plaintiff-Appellant's injury was purposefully self-inflicted within the meaning of ORC [Sections] 4123.46 and 4123.54, thereby erroneously denying him the right to participate in Ohio's Workers' Compensation benefits for the injury.
 An appellate court reviews a motion for summary judgment on a de novo basis. Griner v. Minster Bd. of Education (1998), 128 Ohio App.3d 425, 430, 715 N.E.2d 226. Thus, this Court considers the motion independently and without deference to the trial court's findings. J.A. Industries, Inc. v. All American Plastics, Inc. (1999), 133 Ohio App.3d 76, 82, 726 N.E.2d 1066. It is well-established under Ohio law that a court may not grant a motion for summary judgment unless the record demonstrates: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. See also, Civ.R. 56(C).
"[T]he Workers' Compensation Act does not create a general insurance fund for the compensation for injuries in general to employees but only for those injuries which occur in the course of and arise out of the employment." Lohnes v. Young (1963), 175 Ohio St. 291, 292, 194 N.E.2d 428,429-430. For the purposes of workers' compensation, R.C. 4123.01(C) defines an "injury" as "any injury, whether caused by external means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." An employee is entitled to participate in the Workers' Compensation Fund only if both prongs of this test are satisfied. That is, the injury must have occurred "in the course of" employment, and it must have arisen out of the same.Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 278, 551 N.E.2d 1271,1275. While Appellant largely disputes the trial court's conclusion that the injury did not "arise out of" his employment as a matter of law, we find it unnecessary to reach this particular issue.
Regardless of whether Appellant's injury occurred during the course of and arose out of his employment, we observe R.C. 4123.54, which further describes injuries that are not compensable under the workers' compensation laws:
 Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:
(A) Purposely self-inflicted; * * *
Likewise, R.C. 4123.46 sets forth the following:
 The bureau of workers' compensation shall disburse the state insurance fund to employees of employers who have paid into the fund the premiums applicable to other classes to which they belong when the employees have been injured in the course of their employment, wherever the injuries have occurred, and provided the injuries have not been purposely self-inflicted * * *.
 In Vance v. Trimble (1996), 116 Ohio App.3d 549, 668 N.E.2d 1049, the Tenth District Court of Appeals was called upon to interpret the term "purposely self-inflicted". In that case, a groundskeeper employed by the Ohio State University sustained a minor injury while on the job. Vance, 116 Ohio App.3d at 551, 668 N.E.2d 1049. A doctor subsequently prescribed Darvocet for the pain. Id. While taking the medication, Vance apparently became intoxicated and was later found dead. Id. The toxicology report indicated the presence of between eighteen to twenty Darvocet capsules in Vance's system at the time of his death. Id. Vance's wife then filed a claim for workers' compensation benefits based upon her husband's death. Id.
After the claim was denied administratively, Vance's wife initiated an action in the trial court. The trial court eventually granted summary judgment against the beneficiary, finding that the injury was "purposely self-inflicted" and therefore excluded from coverage.
The appellate court affirmed the trial court's judgment because the record clearly showed that Vance voluntarily overdosed on Darvocet, presumably because of the sheer number of capsules found in his system.Id. at 554, 668 N.E.2d at 1052. Although Vance's wife asserted that an injury should be classified as "purposely self-inflicted" only if the decedent intended the death, the court found no merit in this argument.Id. "[T]he determinative factor is whether the act leading to [the] death was intentional. There is no language in either R.C. 4123.54 or 4123.46 to suggest that Vance must [have] intended his death; rather, Vance must only have intended to take the prescribed medication in excess of the recommended dosage. Suicide is not the issue." Id.
We find the instant case analogous to Vance in that Appellant walked down the cashier aisle on his own volition and intentionally punched the display cabinet. There is simply no evidence to suggest otherwise. While Appellant may not have intended to fracture his hand, we have already noted that the key factor is the intent to do the act that caused the end result, whatever that may be.
We further note that the instant case is readily distinguishable fromOsborn v. Bur. of Workers' Comp. (1999), 134 Ohio App.3d 645,731 N.E.2d 1189, and Shade v. W. Williams Schmidt Assoc., Inc. (Jan. 26, 1987), Richland App. No. CA-2435, unreported. In each of these cases, the appellate court reversed a grant of summary judgment because the evidence demonstrated a genuine issue of material fact as to whether the injury was "purposely self-inflicted".
For example, in Shade, the claimant stated that he was entitled to workers' compensation benefits because he was injured when he started pushing on a door that accidentally swung back and smashed his hand. The employer, on the other hand, asserted that the claimant "slammed his hand into the door * * * out of anger." Shade at *1. The Fifth District Court of Appeals reversed and remanded the case for further proceedings because there was a question as to whether the claimant intended to do the act or whether it occurred out of sheer carelessness. Id. There is no indication of carelessness or negligence in this case.
Based upon the foregoing, we find Appellant's eighth assignment of error not well taken and we overrule the same. Moreover, in light of our determination that Appellant's claim is precluded by R.C. 4123.54 and 4123.46 as a matter of law, we find Appellant's remaining seven assignments of error to be moot.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
 SHAW and BRYANT, JJ., concur.