[Cite as *Parker v. Honda of Am. Mfg., Inc.*, 2009-Ohio-6866.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### UNION COUNTY


GAYLEEN PARKER,                                    CASE NO. 14-09-27

   PLAINTIFF-APPELLANT,

 v.

HONDA OF AMERICA MFG., ET AL.,          O P I N I O N

   DEFENDANTS-APPELLEES.


**Appeal from Union County Common Pleas Court**
**Trial Court No. 2008-CV-0489**

**Judgment Affirmed**

**Date of Decision:  December 28, 2009**


APPEARANCES:

   *Adam H. Leonatti* **for Appellant**

   *Gerald Waterman* **for Appellee**

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Gayleen Parker, appeals the judgment of the Court of Common Pleas of Union County granting summary judgment in favor of Defendant-Appellees, Honda of America MFG., Inc. (hereinafter "Honda"), and the Ohio Bureau of Workers' Compensation (hereinafter "BWC"), barring her from receiving compensation under the Workers' Compensation Act in conjunction with the death of her husband, John Parker (hereinafter "the decedent"). On appeal, Parker argues that the trial court erred in basing its grant of summary judgment upon its own factual conclusions about the issues instead of her medical expert's testimony about the issues, and that the trial court erred in concluding that the decedent's prescription OxyContin abuse disqualified her death claim pursuant to R.C. 4123.54(A)(1), even though her medical expert offered testimony that the decedent's drug abuse was unwillful and nonvolitional. Based upon the following, we affirm the judgment of the trial court.

{¶2} The following facts are undisputed. In 1988, John Parker, the decedent, suffered a severe back injury while employed by Honda. Thereafter, his workers' compensation claim was allowed for the injury and he underwent several surgical procedures in an unsuccessful attempt to alleviate his pain. In order to manage his pain, the decedent was prescribed and began using OxyContin in March 1999, to which he subsequently became addicted. In August 2004, the

decedent sought treatment for his dependency on cocaine and OxyContin. In March 2005, he again sought treatment for his addictions which had grown to include cocaine, OxyContin, Percocet, and heroin. In March 2006, he was discovered dead with a syringe in his arm, a lighter and spoon, and thirty-seven OxyContin pills. Cocaine and OxyContin were found on both the syringe and spoon. The coroner concluded that the immediate cause of the decedent's death was a lethal concentration of OxyContin, which he had melted down and injected intravenously.

{¶3} In September 2007, Gayleen Parker, the decedent's wife, filed a complaint in the trial court against Honda and BWC, asserting that the decedent, while employed by Honda, suffered an injury as a direct and proximate result of his work activities in 1988; that, in 2006, the decedent died as a result of an OxyContin overdose which was the direct and proximate result of his work injury; that she had filed a claim for death benefits with BWC and Honda; that, in May 2007, the district hearing officer of the Industrial Commission of Ohio denied her claim for death benefits; that she appealed the May 2007 denial of her claim for death benefits, which the Industrial Commission again denied in August 2007; and, that she appealed the August 2007 denial of her claim for death benefits, which the Industrial Commission denied for a third time later in August 2007.

{¶4}  In September 2008, Honda filed an answer to Parker's complaint, denying the allegations, and contending that the complaint was barred by the statute of limitations and by operation of R.C. 4123.54.

{¶5}  In May 2009, Honda filed a motion for summary judgment, arguing that it had filed deposition testimony of two medical experts finding that the decedent's death was the result of his abuse of prescription medication in concert with illegal drugs and that it was not an accidental overdose, but a purposeful ingestion of controlled and illegal substances; that the decedent's acts of melting OxyContin, injecting it into his blood stream, and using street drugs was an intervening cause that broke the chain of causation between his work injury and his death; and, that the facts surrounding the decedent's death were distinguishable from those set forth in *Borbely v. Prestole Everlock, Inc.* (1991), 57 Ohio St.3d 67, which carved out a narrow exception to the workers' compensation recovery exclusion for self-inflicted injuries in certain cases of suicide.

{¶6}  In June 2009, Parker filed a memorandum contra to Honda's motion for summary judgment, asserting that the decedent's addiction to OxyContin was caused by his work injury, and that his work-injury-induced addiction to OxyContin caused him to be dominated by a severe disturbance of the mind that overrode his normal, rational judgment, and lead to his death by overdose.  In support, Parker provided the expert testimony of Dr. Richard N. Whitney, who was deposed and agreed that the decedent's "work-injury-related addiction to

OxyContin and/or oxycodone caused him to be so dominated by a disturbance of the mind of such severity as to override his normal, rational judgment that it led to his overdose and death" and stated that, consequently, he would not consider the decedent's addiction to be volitional or willful. (Whitney Dep., p. 59).

{¶7} In July 2009, the trial court granted Honda's motion for summary judgment against Parker, finding that R.C. 4123.54 excluded workers' compensation claims for dependents where the decedent's injury was purposefully self-inflicted or caused by the decedent being under the influence of a controlled substance not prescribed by a physician, where the being under the influence of a controlled substance not prescribed by a physician was the proximate cause of the injury. The trial court concluded:

> **[T]his court finds that Parker's claims for workers' compensation benefits is precluded under the provisions of R.C. 4123.54 and R.C. 4123.46. This court cannot find that there is any genuine issue as to whether [the decedent] acted voluntarily when he crushed, heated, and injected OxyContin directly into his veins. That misuse of the prescription drugs coupled with his ingestion of other controlled substances was an intentional and voluntary act. This Court must conclude that [the decedent's] tragic death was purposefully self-inflicted.**

(July 2009 Decision and Judgment Entry, p. 8). In support, the trial court cited *Vance v. Trimble* (1996), 116 Ohio App.3d 549; *Shope v. Meijer, Inc.,* 3d Dist. No. 5-2000-30, 2001-Ohio-2133. Further, the trial court determined that Parker's claims also did not fall within the exception to R.C. 4123.54 and R.C. 4123.46 created by the Supreme Court of Ohio in *Borbely,* supra. The trial court stated:

-5-

> **Plaintiff urges this court to extend the Supreme Court's holding in *Borbely* to death claims arising from purposefully self-inflicted drug overdoses. In so doing, Plaintiff invites the Court to disregard the Revised Code and the Court's holding in *Borbely*. The court declines such an invitation[.] R.C. 4123.54 and R.C. 4123.46 clearly provide that workers' compensation benefits are not available when the injury is purposefully self-inflicted. The Ohio Supreme Court appears to have created a small exception to those statutes by finding that the "chain-of-causation approach is more logical and enlightened in determining _cases involving a suicide_ that is alleged to be the proximate result of a work-related injury." However, by its plain language, that holding applies only to cases involving a suicide. In this case, neither party suggests, nor does the evidence support, a finding that [the decedent] committed suicide. It follows that *Borbely* has no bearing on the outcome in this case.**

(Emphasis sic.) (July 2009 Decision and Judgment Entry, p. 9).

{¶8} It is from this judgment that Parker appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY BASING SUMMARY JUDGMENT UPON ITS OWN FACTUAL CONCLUSION THAT THE DECEDENT'S ABUSE OF OXYCONTIN WAS "WILLFUL AND VOLUNTARY" WHEN THE APPELLANT'S MEDICAL EXPERT SPECIFICALLY TESTIFIED THAT THE DECEDENT'S "VOLITIONAL AND WILLFUL USE [OF OXYCONTIN] HAS GONE OUT THE WINDOW" AND THAT DECEDENT'S VERY ABUSE OF OXYCONTIN WAS CAUSED BY HIS WORK-INJURY-INDUCED ADDICTION WHICH CAUSED HIM TO BE "DOMINATED BY A DISTURBANCE OF THE MIND OF SUCH SEVERITY AS TO OVERRIDE HIS NORMAL, RATIONAL JUDGMENT."**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN CONCLUDING THAT THE DECEDENT'S PRESCRIPTION OXYCONTIN ABUSE DISQUALIFIES APPELLANT'S DEATH CLAIM PURSUANT TO R.C. 4123.54(A)(1), EVEN THOUGH APPELLANT CAN PROVE BY MEDICAL EXPERT TESTIMONY THAT THE DECEDENT'S DRUG ABUSE ITSELF WAS UNWILLFUL AND NONVOLITIONAL AND CAUSED BY HIS WORK-INJURY-INDUCED ADDICTION WHICH CAUSED HIM TO BE DOMINATED BY A DISTURBANCE OF THE MIND OF SUCH SEVERITY AS TO OVERRIDE HIS NORMAL, RATIONAL JUDGMENT.**

{¶9} Due to the nature of Parker's assignments of error, we elect to address them together and in reverse order.

*Assignments of Error Nos. I & II*

{¶10} In her second assignment of error, Parker contends that the trial court erred in concluding that the decedent's OxyContin abuse disqualified her death claim pursuant to R.C. 4123.54(A)(1), because she produced medical expert testimony that the decedent's drug abuse was unwillful and nonvolitional because it was caused by his work-injury-induced addiction.

{¶11} R.C. 4123.54 governs workers' compensation in cases of death and provides, in pertinent part:

> **(A)    Except as otherwise provided in division (I) of this section, * * * the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:**
>
> **(1)    Purposely self-inflicted; or**

**(2)     Caused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury, is entitled to receive, either directly from the employee's self-insuring employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease, or death, and the medical, nurse, and hospital services and medicines, and the amount of funeral expenses in case of death, as are provided by this chapter.**

{¶12} Despite the exclusions set forth in R.C. 4123.54(A)(1) and (2), the Supreme Court of Ohio has found that certain situations involving suicide are not "purposefully self-inflicted." In *Borbely*, 57 Ohio St.3d at 71, a decedent was physically injured during the course of his employment at a plant. Although he eventually returned to work two years later, he suffered a second work-related injury shortly thereafter. Several years later, the decedent overdosed on prescription pain medication, and, two days after leaving the hospital, committed suicide by shooting himself in the head.

{¶13} The Supreme Court reasoned that, given the General Assembly's statutory directive to liberally construe the workers' compensation provisions in R.C. 4123.95, and, in order to be consistent with the purpose of workers' compensation law under Section 35, Article II, Ohio Constitution, an exception should be carved out in certain instances involving suicide. Accordingly, the Court adopted a "chain-of-causation" approach to determine whether a suicide was

a proximate result of a work-related injury, holding that, "[i]n order for dependents to recover workers' compensation benefits for a death by *suicide*, they must establish by a preponderance of the evidence that (1) there was initially an injury received in the course of, and arising out of, the employee's employment as defined by R.C. 4123.01(C); (2) the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) the disturbance resulted in the employee's *suicide*." (Emphasis added.) *Borbely*, 57 Ohio St.3d 67, at syllabus.

{¶14} The Sixth Appellate District considered the issue of whether the exception for certain suicides meeting the criteria in *Borbely* may properly be applied to incidents involving accidental death resulting from drug and alcohol abuse in *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360. In *Conley-Slowinski*, a decedent was injured arising out of his employment and was allowed workers' compensation claims for his bodily injuries, as well as aggravation of his pre-existing conditions of depression and alcoholism. Thereafter, the decedent died in a car/train collision and was discovered to have a blood alcohol level of .34. Subsequently, the decedent's wife, Conley-Slowinski, filed a claim for workers' compensation benefits on the basis that the decedent's death was caused by his alcohol abuse, which was caused by his depression, which was aggravated due to his work-related injury. Conley-Slowinski's claim was denied by the Industrial Commission, and the denial was

affirmed by the trial court. On appeal, the Sixth Appellate District determined that, although courts had allowed benefits to be extended for medical conditions that had a proximate link to the original work-related injury, including a secondary drug or alcohol abuse problem, courts had not permitted the further linking of any injuries caused by that secondary drug or alcohol abuse. See *Conley-Slowinski*, 128 Ohio App.3d at 364, citing *Karavolos v. Brown Derby, Inc*. (1994), 99 Ohio App.3d 548. Accordingly, the Sixth Appellate District declined to expand R.C. 4123.54, and affirmed the trial court's denial of Conley-Slowinski's claim. See Id.; see, also, *Embry v. Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1374, 2005-Ohio-7021, ¶26; *Vance,* supra.

{¶15} We find the facts in the case sub judice analogous to *Conley-Slowinski*, supra, and distinguished from *Borbely*, supra. *Borbely* set forth a three-part test for determining whether a dependent may recover "workers' compensation benefits for a death by *suicide*," and the third step of the test requires that the dependent establish by a preponderance of the evidence that "the [mental] disturbance resulted in the employee's *suicide*." (Emphasis added.) *Borbely*, 57 Ohio St.3d 67, at syllabus. The language of *Borbely* clearly indicates that it concerns suicide, and we are not persuaded by Parker's argument that the exception should be expanded to include accidental death caused by drug abuse. Additionally, we note that it is undisputed that the decedent's death was not suicide, but was an accidental death due to a drug overdose.

**{¶16}** We next turn to Parker's first assignment of error. In her first assignment of error, Parker contends that the trial court erred by basing its summary judgment decision on its own factual conclusion that the decedent's use of OxyContin was willful and voluntary, when she presented medical expert testimony that the decedent's use of OxyContin was not willful and voluntary, but was caused by his work-injury-induced addiction.

**{¶17}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 604-605, 2002-Ohio-3932, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶18} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E). Additionally, in determining the existence of a genuine triable issue, the trial court may not resolve issues of credibility of witness testimony, including expert witness testimony, as this is outside the province of summary judgment. *Morton Internatl., Inc. v. Continental Ins. Co.* (1995), 104 Ohio App.3d 315, 323; *Carpenter v. Scherer-Mountain Ins. Co.* (1999), 135 Ohio App.3d 316, 324.

{¶19} Here, Parker contends that she offered Dr. Whitney's medical expert testimony that the decedent's abuse of OxyContin was neither volitional nor willful, but the product of a work-injury-induced addiction to his prescription pain medication, and that the trial court either ignored or rejected Dr. Whitney's opinion, which was not mentioned in the judgment entry granting summary judgment. Further, Parker claims that the trial court's statement that the decedent's "unfortunate death was the result of his willful and voluntary abuse of

powerful controlled substances" demonstrated that it favored its own medical opinion over the expert witness.

{¶20} Initially, we note that Parker's offer of expert testimony that the decedent's OxyContin addiction caused him "to be dominated by a disturbance of the mind of such severity as to override his normal rational judgment"[1] makes this case unique from the others cited in our consideration of the second assignment of error, as no such evidence was presented by the plaintiffs in those cases. However, we find this distinction to be without meaning. Parker is correct that *Borbely* carved out an exception to the workers' compensation exclusion in cases of self-inflicted injury where "the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment"; however, as we found in our consideration of her second assignment of error, the *Borbely* exception expressly refers to cases of suicide, and has not been applied to cases of accidental death. *Borbely*, 57 Ohio St.3d 67, at syllabus; see, also, *Conley-Slowinski*, supra. As we have declined to extend the Supreme Court's holding in *Borbely* to cases of accidental death, Dr. Whitney's medical expert testimony concerning the *Borbely* factors was irrelevant, and the trial court did not err in finding that there were no genuine issues of material fact and that Honda and BWC were entitled to judgment as a matter of

---

[1] We note that, interestingly, the phraseology of the expert's testimony about the decedent's addiction was virtually identical to the standard set forth by the Supreme Court of Ohio in *Borbely*.

law.

**{¶21}** Finally, we agree with Honda's averment at oral argument that the facts in the case sub judice differ from those present in *Osborn v. Bur. of Workers' Comp.* (1999), 134 Ohio App.3d 645, in which the Second Appellate District reversed a trial court's grant of summary judgment to BWC, determining that genuine issues of material fact were present. In *Osborn*, the plaintiff seeking to obtain workers' compensation widow benefits presented expert testimony that the decedent had taken a fatal dose of prescription pain medication following a work-related injury, and that it was not uncommon for individuals to unintentionally exceed the recommended dosage because the medication affected cognitive abilities and could cause confusion over how many pills had been taken. In reversing the trial court's grant of summary judgment to BWC, the Second District found that, in light of the expert testimony, a genuine issue existed as to whether the decedent intentionally or accidentally took an overdose of the medication. In contrast, here, Parker did not argue and offered no evidence that the decedent accidently took more than the recommended dosage of OxyContin, which, we note, he ingested along with cocaine. Instead, Parker's argument focused on the volition of the decedent's *intentional* overdose of OxyContin due to his addiction to the drug, which, as discussed above, is irrelevant because *Borbely* applies only to suicides and not to accidental deaths.

**{¶22}** Accordingly, we overrule Parker's first and second assignments of error.

**{¶23}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J., and WILLMOWSKI, J., concurs.**

**/jnc**